UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AKIB ABIOLA,

    Plaintiff,

v.                                    Case No. 10-13377

CRAIG BEASLEY, CYNTHIA JOINER,        Honorable Patrick J. Duggan
ALTEN OIL CORPORATION, SMART
PLANET SERVICES, INC., and SMART
PLANET SERVICES LLLP,

    Defendants.
    _____/

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
  District Courthouse, Eastern District
  of Michigan, on December 20, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Plaintiff Akib Abiola ("Plaintiff") filed this diversity action against Defendants on August 25, 2010, alleging various state law claims related to a sales commission agreement allegedly reached between the parties in June 2010. Presently before the Court is a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendants Craig Beasley and Alten Oil Corporation on October 20, 2010. Plaintiff filed a response to the motion on November 10, 2010, and this Court held a motion hearing on December 9, 2010. For the reasons that follow, the Court grants the motion.

**Factual and Procedural Background**

Plaintiff is a Michigan resident who works as a commercial broker connecting buyers and sellers of varying products. (Compl. ¶ 1; Pl.'s Resp. Ex. 2 ¶ 3.) In June 2010, Defendant Cynthia Joiner ("Joiner"), a Texas resident and agent of Smart Planet Services, Inc., introduced Plaintiff to Defendant Craig Beasley ("Beasley"). (Compl. ¶¶ 3; Pl.'s Resp. Ex. 2 ¶ 4.) Smart Planet Services Inc. is a Texas corporation with its principal place of business in Houston, Texas. (Compl. ¶ 5.) Beasley is an Indiana resident and agent of Defendant Alten Oil Corporation ("Alten Oil"). (Compl. ¶ 2.) Alten Oil is an Indiana corporation with its principal place of business in Madison, Indiana. (*Id*. ¶ 4.)

Plaintiff was located in Michigan when he was first introduced and subsequently engaged in communications with Beasley. (Pl.'s Resp. Ex. 2 ¶ 5.) Beasley identified himself to Plaintiff as the Vice President of International Business at Alten Oil and expressed an interest in conducting business with Plaintiff. (*Id*. ¶ 7.) Specifically, Beasley was interested in having Plaintiff secure a buyer for five million barrels of Russian Colonial Kerosene Fuel JP54 ("fuel") that was "on hand and available for immediate delivery." (*Id*. ¶ 8.)

Plaintiff alleges that he received a "Commercial Pay Order" from Alten Oil on June 10, 2010 that, per its terms, entitled Plaintiff to a specified commission if he secured a ready, willing, and able buyer for the fuel.[1] (*Id*. ¶ 9; Compl. Ex. A.) Plaintiff further alleges that, prior to the execution of the Commercial Pay Order, Beasley represented to

---

[1] Plaintiff alleges in his Complaint that the commission was "$1.00 per barrel to be divided in equal shares of $.25/barrel to Abiola and three other individuals." (Compl. ¶ 12.)

him that 50% of the fuel was "liftable," meaning that it was ready to be delivered. (Pl.'s Resp. Ex. 2 ¶ 8.) On June 11, 2010, Beasley executed the Commercial Pay Order and sent a copy to Plaintiff via electronic mail. (*Id*. ¶ 10.)

Plaintiff thereafter engaged in efforts to find a purchaser for the fuel. (*Id*. ¶ 12.) Shortly before June 17, 2010, Plaintiff secured "The Carlyle Group" as a buyer for the fuel and, on June 17, 2010, informed Beasley of the same. (*Id*. ¶¶ 13, 14.) Beasley subsequently informed Plaintiff that he did not intend to perform under the Commercial Pay Order and that Alten Oil in fact did not have the fuel on hand. (*Id*. ¶¶ 16, 17.)

Believing that Defendants used him to gain access to a buyer without any intent to pay him commissions for the sale, Plaintiff filed this lawsuit on August 25, 2010. In his Complaint, Plaintiff alleges the following claims against Defendants Beasley, Alten Oil, Joiner, Smart Planet Services Inc., and Smart Planet Services LLLP: (I) "Piercing the Corporate Veil"; (II) Breach of Contract; (III) Fraud; (IV) Silent Fraud; (V) Fraud in the Inducement; (VI) Negligent Misrepresentation; (VII) Civil Conspiracy; (VIII) Unjust Enrichment; and (IX) Violation of the Michigan Sales Representative Commission Act, Mich. Comp. Laws § 600.2961(1)(d). Beasley and Alten Oil responded to Plaintiff's Complaint by filing the pending motion to dismiss on October 20, 2010.[2] Smart Planet Services LLLP failed to respond to the Complaint and Plaintiff sought and received a Clerk's Entry of Default as to this defendant on October 21, 2010.

---

[2]There is no indication on the Court's docket that Joiner or Smart Planet Services, Inc. have been served with a Summons or a copy of Plaintiff's Complaint. Neither defendant has filed any pleadings or had an attorney enter his or her appearance.

On October 22, 2010, Plaintiff filed a Request for a Clerk's Entry of Default Judgment against Smart Planet Services LLLP pursuant to Federal Rule of Civil Procedure 55(b)(1). Rule 55(b)(1) provides, in pertinent part:

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk– on the plaintiff's request, with an affidavit showing the amount due– must enter judgment for the amount and costs against a defendant who has been defaulted for not appearing.

Fed. R. Civ. P. 55(b)(1). While Plaintiff attached an affidavit in support of his request stating that he is entitled to damages in the amount of $15 million, the amount claimed does not fall within the contemplated meaning of the term "sum certain."

"The term 'sum certain' has been held to have a meaning similar to 'liquidated amount.'" *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1192 (Me. 1993) (interpreting term in Maine statute akin to Federal Rule of Civil Procedure 55(b)(1)); *see also* 46 Am. Jur. 2d Judgments § 270 (2010). "'A claim is liquidated when the amount thereof has been ascertained and agreed upon by the parties or fixed by operation of law.'" Id. (quoting *Hallett Constr. Co. v. Iowa State Highway Comm'n*, 139 N.W.2d 421, 426 (Iowa 1966)). Examples of situations where the amount due cannot be disputed include "actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." *Id.* (citing *Reynolds Sec., Inc. v. Underwriters Bank*, 44 N.Y.2d 568, 406 N.Y.S.2d 743, 746, 378 N.E.2d 106, 109 (1978)). As the $15 million sought by Plaintiff is not "a sum certain or an amount that can be made certain by computation" or an amount that "can be determined without resort to extrinsic proof," the Court is denying

4

Plaintiff's request for a Clerk's Entry of Default Judgment against Smart Planet Services LLLP.

**Applicable Law and Analysis**

The plaintiff has the burden of establishing a court's jurisdiction over a defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785 (1936)). Where the defendant's motion to dismiss for lack of personal jurisdiction is supported by affidavits, the plaintiff "by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction." *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974). If the defendant's motion is decided solely on the basis of these materials, the plaintiff need only make a *prima facie* showing of jurisdiction in order to defeat the defendant's motion.[3] *See id*. "Under these circumstances the burden of the plaintiff is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980) (quoting *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 571 (S.D. Fla. 1978)). A *prima facie* showing requires the plaintiff to "'demonstrate facts which support a finding of jurisdiction . . .'" *Id*. at 438 (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

In a diversity case such as this, state law governs personal jurisdiction.

---

[3]Alternatively, if the court concludes that the written materials raise issues of credibility or disputed issues of fact, a preliminary hearing may be held. *Am. Greetings Corp. v. Cohen*, 839 F.2d 1164, 1169 (6th Cir. 1988). In that case, the plaintiff must show by a preponderance of the evidence that jurisdiction exists. *Id*.

*Theunissen*, 935 F.2d at 1459. "However, constitutional concerns of due process limit the application of this state law." *Id.* In other words, even if the provisions of state law are deemed met, the assertion of jurisdiction over the defendant must still comport with the notions of fundamental fairness required by the Due Process Clause. *See Cole v. Miletti*, 133 F.3d 433, 436 (6th Cir. 1998) (citations omitted).

Michigan provides personal jurisdiction over out-of-state defendants pursuant to "general" or "limited" jurisdiction statutes. Mich. Comp. Laws §§ 600.701, .705, .711, .715. With respect to Beasley, general personal jurisdiction can be founded on one of three grounds: (1) presence in the state at the time when process is served; (2) domicile in the state at the time of service of process; or (3) "[c]onsent, to the extent authorized by the consent and subject to the limitations provided in section [600.]745." *Id.* § 600.701. With respect to Alten Oil, general personal jurisdiction is authorized when a corporation either (1) is incorporated under the laws of the state; (2) carries on a continuous and systematic part of its general business within the state; or (3) consents to jurisdiction. *Id.* § 600.711. Based on the facts presented to this Court, neither the first or second grounds can be invoked to exercise general personal jurisdiction over Beasley or Alten Oil.

As to the third ground, Plaintiff argues that Beasley and/or Alten Oil consented to be sued in Michigan based on paragraph 1(I) of the Commercial Pay Order, which provides:

> This Agreement is valid for any and all transaction [sic] between the parties herein and shall be governed by the enforceable law in All Commonwealth Country's, European Union Country's, USA Courts, or under Swiss Law in Zurich, in the event of dispute, the arbitration laws of states will apply.

6

(Pl.'s Resp. Ex. 1.) This Court cannot find Beasley's or Alten Oil's consent to personal jurisdiction based on this provision.

At best, the clause is a choice-of-law provision (although it reflects the selection of no specific law) or an agreement to arbitrate. In no way does this provision reflect the parties' consent to suit in a particular jurisdiction or this forum's exercise of personal jurisdiction. While a choice-of-law provision is not irrelevant to the personal jurisdiction analysis, "[t]he existence of a choice-of-law provision, standing alone, is insufficient to establish jurisdiction . . . ."[4] *Intera Corp. v. Henderson*, 428 F.3d 605, 618-19 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)).

Michigan law sets forth various relationships between an out-of-state individual or corporate defendant and the forum that may confer "limited personal jurisdiction." Mich. Comp. Laws §§ 600.705, .715. Only two of those relationships possibly apply in the case at bar based on the facts set forth by Plaintiff, although the second does not provide jurisdiction with respect to Plaintiff's non-tort claims:[5] (1) "[t]he transaction of any

---

[4]The existence of a choice-of-law provision may be relevant in determining "whether a defendant has purposefully invoked the benefits and protections of a State's law for jurisdictional purposes." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481, 105 S. Ct. 2174, 2187 (1985) (internal quotation marks omitted). Here however, because no jurisdiction's laws (specifically Michigan's) are chosen, the Court concludes that the clause has no bearing on its personal jurisdiction analysis.

[5]The exercise of limited personal jurisdiction over a defendant is claim specific, meaning that "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (6th Cir. 2006); *see also Remick v. Manfredy*, 238 F.3d 248, 256-59 (3d Cir. 2001) (holding that the personal jurisdiction inquiry "is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [the plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to . . . other claims"); *Phillips Exeter Academy v. Howard Phillips Fund,*

7

business within the state" or (2) "[t]he doing or causing an act to be done, or consequence to occur, in the state resulting in an action for tort."[6] *Id.*

With respect to "[t]he transaction of any business within the state," a defendant's business dealings in the state need not have been extensive or prolonged to demonstrate the existence of the relationship because "the Michigan statute allows 'any' business dealings to suffice and 'any' includes even the slightest amount." *Salom Enter., LLC v. TS Trim Indus., Inc.*, 464 F. Supp.2d 676, 683 (E.D. Mich. 2006) (citing *Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623, 624 n.2 (1971)). Moreover, Michigan's long arm statute has been interpreted as "confer[ring] on the state courts the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir. 1981). Thus for purposes of resolving the pending motion, the Court will focus on whether exercising personal jurisdiction over Beasley and Alten Oil comports with due process.

Due Process requires that a defendant's contacts with the forum be sufficient "such that the maintenance of the suit does not offend 'traditional notions of fair play and

---

*Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) ("Questions of specific jurisdiction are always tied to the particular claims asserted").

[6]The other relationships, the existence of which constitutes a sufficient basis of jurisdiction under Michigan's limited personal jurisdiction statutes, are: (1) "[t]he ownership, use, or possession of any real or tangible personal property situated within the state"; (2) "[c]ontracting to insure any person, property, or risk located within this state at the time of contracting"; and (3) "[e]ntering into a contract for service to be performed or for materials to be furnished in the state *by the defendant*." Mich. Comp. Laws §§ 600.705, .715 (emphasis added).

substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 342-43 (1940)). The Sixth Circuit requires satisfaction of the following criteria to find that a nonresident defendant has sufficient contacts with the forum to support limited personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

The first criterion– purposeful availment– focuses on the content of the defendant's contact with the forum. "It is the 'quality' of [the] 'contacts,' and not their number or status, that determines whether they amount to purposeful availment." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994) and *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)). Jurisdiction is not proper where the defendant's contacts with the forum are "random," "fortuitous," or "attenuated," or a result of the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (citations omitted). "Jurisdiction is proper, however, where the contacts proximately resulted from actions by the defendant . . . that creates a 'substantial connection' with the forum state." *Id*. at 475, 105 S. Ct. at 2183-84.

Addressing interstate contractual obligations specifically, the Supreme Court in *Burger King* "emphasized that parties who 'reach out beyond one state and create *continuing* relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 471 U.S. at 473, 105 S. Ct. at 2182 (emphasis added) (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S. Ct. 927, 929 (1950)). Entering into a contract with an out-state-party, without more, is insufficient to establish the requisite minimum contacts. *Id*., 105 S. Ct. at 2185. Rather, in a breach of contract case, to determine whether a party purposefully availed itself of the privilege of conducting business in the forum, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . ." *Id*. at 479, 105 S. Ct. at 2185. "It is essential that the contract relied upon have a 'substantial connection' with the forum State." *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir. 1986) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201 (1957) (finding insufficient contacts between an Alaska seller of reindeer antlers and Virginia where Alaska seller entered into a contract with a Virginia corporation and shipped frozen reindeer antlers to the Virginia corporation)). In this Court's view, neither Beasley nor Alten Oil "reached out" to Michigan for the purpose of creating "continuing relationships and obligations" with a Michigan citizen; the Commercial Pay Order lacks a "substantial connection" with the forum.

According to Plaintiff's affidavit, it was Texas resident Joiner, Managing Partner of Texas corporation Smart Planet Services Inc., who introduced Beasley and Alten Oil to

Plaintiff. Beasley was seeking to find a buyer to purchase five million barrels of Russian fuel "on hand and available for immediate delivery." (Pl.'s Resp. Ex. 2 ¶ 8.) Nothing suggests that Beasley was looking for a buyer or intermediary buyer in Michigan, specifically. In fact the buyer Plaintiff claims he secured was The Carlyle Group which, according to "Skype" exchanges attached to Plaintiff's response, has offices in numerous jurisdictions throughout the world but none in Michigan. (*See* Pl.'s Resp. Ex. 3 at 1-2.) The Skype exchanges further reflect that the fuel was to be delivered to Rotterdam. (*Id.* at 5.)

Plaintiff identifies five communications between himself and Beasley in the affidavit he submits in response to Beasley's and Alten Oil's motion. These communications are: (1) an initial communication regarding the available fuel via an unidentified means and initiated by an unidentified party; (2) receipt of a copy of the Commercial Pay Order from Beasley via electronic mail on June 10; (3) receipt of an executed Commercial Pay Order from Beasley via electronic mail on June 11; (4) communications initiated by Plaintiff to Beasley concerning Plaintiff's identification of a buyer via unidentified means; and (5) a telephone call between Beasley and Plaintiff at which time Beasley informed Plaintiff that he did not intend to perform under the Commercial Pay Order and that Alten Oil did not have the fuel on hand. (*Id.* Ex. 2.)

Plaintiff's affidavit does not reflect any negotiations between himself and Alten Oil regarding the supposed sales commission contract. In fact, in his response brief, Plaintiff indicates that Alten Oil prepared and sent the Commercial Pay Order to Plaintiff

and he executed it as presented. (*See* Pl.'s Resp. Br. at 7.)[7] Further, Plaintiff does not suggest that anyone from Alten Oil ever traveled to Michigan. The fact that Plaintiff happened to be located in Michigan during these notably limited communications does not constitute "purposeful availment" by Beasley or Alten Oil. *See Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 982 (6th Cir. 1992) (finding that the requirements of due process were not satisfied where the only contact was that the defendant made an out-of-state telephone call to the plaintiff while the plaintiff was in the forum state, mailed materials to the plaintiff in the forum state, and conducted extensive contract negotiations with the plaintiff in the forum state through an intermediary); *Serra v. First Tennessee Bank, N.A.*, 875 F.2d 1212, 1217 (6th Cir. 1989) (finding that personal jurisdiction would not have been established if the only contact was that the defendant made telephone calls and sent mail to the plaintiff in the forum state to engage in an out-of-state transaction); *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989) (holding that contract negotiations regarding the plaintiff's purchase of real estate in Florida which included telephone calls from the defendant to the plaintiff in the forum state and culminating in the plaintiff's signing the contract in the forum state were "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdiction.")

      Neither Beasley nor Alten Oil purposefully directed any activities at residents of

---

[7]Plaintiff did not execute the Commercial Pay Order. (Pl.'s Resp. Ex. 1.) The "Buyer Intermediary" identified on the Commercial Pay Order and that executed the contract is Rita Eggeraat of Custom Supply Resources of Oceanside, California. (*Id.*)

Michigan. Instead, they sought to find a buyer (presumably one located anywhere in the world, not necessarily Michigan) for Russian fuel. They apparently hired a Texas resident and/or corporation, Joiner and/or Smart Planet Services Inc., as a "seller facilitator" to locate a buyer or buyer intermediary. Joiner on behalf of Smart Planet Services Inc. located Plaintiff, who "fortuitously" was located in Michigan. In short, Beasley did not reach out to Plaintiff for the purpose of creating any "continuing relationship and obligations" in Michigan, but entered into a contract for the one-time purpose of identifying a buyer somewhere in the world to purchase a specified amount of fuel originating from Russia.

Neither Beasley nor Alten Oil "purposefully availed" themselves of the privilege of acting in Michigan or causing a consequence in Michigan. In this Court's view, Beasley's and Alten Oil's contacts with Michigan were precisely the sort of "random," "fortuitous" and "attenuated" contacts that the Supreme Court in *Burger King* and the Sixth Circuit in *LAK* found insufficient to establish a forum's personal jurisdiction over a defendant.[8] Plaintiff fails to set forth facts in his Complaint or affidavit sufficient to make a *prima facie* showing of personal jurisdiction and the Court concludes that exercising personal jurisdiction over Beasley or Alten Oil would not comport with the notions of fundamental fairness required by the Due Process Clause.

Accordingly,

---

[8]As compliance with the Due Process Clause requires compliance with each of the three *Southern Machine* criterion and the first is not met, the Court finds it unnecessary to address the second and third.

**IT IS ORDERED**, that the motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendants Craig Beasley and Alten Oil Corporation is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff's Request for a Clerk's Entry of Default Judgment against Smart Planet Services LLLP is **DENIED**.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:
Anthony R. Paesano, Esq.
Darwyn P. Fair, Esq.